# Ward's Committee v. Kimbel.

(Decided January 10, 1928.)

## Appeal from Butler Circuit Court.

1. Insane Persons.—Powers of incompetent's committee being same as those of infant's guardian, under Ky. Stats., sec. 2153, he cannot, directly or indirectly, break in on ward's capital without court order, expend more than income of ward's estate on ward, except at his own peril, nor sell ward's realty, except in compliance with court order, mortgage premises, or impose lien or other incumbrance thereon.

2. Insane Persons.—It being important that a 50-year old feeble-minded man's estate, consisting only of 200-acre tract of land and about $500 in his committee's hands, be preserved, sale of land should not be ordered for his maintenance, under Ky. Stats., sec. 2150, unless indispensably necessary.

3. Appeal and Error.—Court's instructions to jury cannot be considered on appeal, where not made part of record.

4. Insane Persons.—Persons of unsound mind, like infants, are under special protection of courts of equity, which are charged with duty to see that they are not prejudiced by any act or omission of those representing them.

5. Insane Persons.—Action against feeble-minded person's committee for value of services in caring for ward presents question as to how income from ward's estate shall be appropriated, and hence must be transferred to equity, that justice may be done ward and his interests properly protected.

6. Insane Persons.—In action against feeble-minded person's committee for value of services rendered in caring for ward, equity court must determine from all the evidence what allowance should be made to plaintiff and direct its payment by committee not exceeding amount in latter's hands, considering what plaintiff paid for such services before committee's appointment, ward's condition at time, and all the circumstances.

7. Insane Persons.—One caring for feeble-minded person cannot maintain any claim against latter's committee in excess of income from ward's land, being bound to take notice that land cannot be sold or mortgaged in any way without court order, under Ky. Stats., sec. 2150.

W. R. GARDNER and W. S. HOLMES for appellant.

E. N. MAYHUGH and G. V. WILLIS for appellee.

Opinion of the Court by Commissioner Hobson—
Reversing.

James G. Ward is a feeble minded man and was duly
so adjudged in the Butler circuit court about 20 years
ago. R. B. Kimbel is a cousin of James G. Ward, and
Ward has lived with him for the last 25 years. Several
committees have been appointed from time to time for
the ward. W. S. Holmes was appointed about eight years
ago and took charge of the estate. On October 14, 1924,
R. B. Kimbel brought this suit against Holmes, as com-
mittee, alleging in his petition that up to the appoint-
ment of Holmes he had been paid reasonable compensa-
tion for taking care of the ward, but that since Holmes
had been appointed he had failed and refused to pay him
for his services and had been negligent in looking after
and caring for his ward, and that plaintiff's services for
the ward were necessary and reasonably worth $300 a
year. The circuit court sustained the defendant's de-
murrer to the petition. On appeal to this court the judg-
ment vas reversed. Kimbel v. Ward's Committee, 214
Ky. 726, 283 S. W. 1042. On the return of the case an
answer was filed controverting the allegations of the peti-
tion. The case was heard before a jury, who returned a
verdict for the plaintiff for $200 a year, amounting to $1,-
000. Judgment was entered on the verdict, and the com-
mittee appeals.

A very different case is shown by the record now
from that before the court when the allegations of the
petition stood admitted. The facts now shown are these:
When the present committee was appointed, no estate
came into his hands except a tract of land of something
over 200 acres, on which taxes were due and unpaid and
the land had been sold for taxes. The place was also in
bad repair. During the eight years the present commit-
tee has collected the rents of the place, and after paying
taxes and the like, there remains in the hands of the com-
mittee about $500. This is the whole estate of the ward,
except the tract of land. During the whole time that the
plaintiff kept the ward, up to the appointment of the
present committee, he received from the previous com-
mittees about $500 in all. While the ward has not a
good mind, he is strong and able to work, and in fact does
work on the plaintiff's farm. As to how much, if any, the
reasonable cost of keeping him exceeds the reasonable
value of his services on the farm, the proof is conflicting.

After Holmes was appointed Kimbel advised him not to come to his house to see his ward. Although Holmes made efforts to get the ward to come to see him, these efforts were fruitless, and he told the plaintiff that he would not pay him anything without an order from court. Thus things ran along until this suit was brought. It also appears in the evidence that the plaintiff had procured from James G. Ward a deed for his tract of land, and that Holmes, whose wife was a relative, had brought a suit and had this deed set aside. The feeling between them was not good after this.

Section 2153, Kentucky Statutes, provides:

"The power and duty of the committee of an idiot, lunatic, imbecile or incompetent person shall, in all respects, be the same as those of the guardian of an infant, except as to education. But the court may appoint a person other than the committee to take charge of the person of the idiot, lunatic, imbecile or incompetent person when he is not confined in an asylum, and may order his committee to make necessary provision for his support."

The powers of a committee being in all respects the same as those of the guardian of an infant, it becomes necessary to define the powers of a guardian under such facts as we have here. In Chapline v. Moore, 7 T. B. Mon. 170, the court thus stated the rule:

"A court of equity never sanctions the conduct of a guardian to break in upon the capital of the infant's estate, by his own authority; the court may be applied to under extraordinary circumstances, and has rarely permitted by its own order a reduction of the capital."

Again in Bybee v. Tharp, 4 B. Mon. 320, the court again said:

"The law will not allow the guardian, but at his own peril, to expend upon the ward more than the income of his or her estate, allowing him, however, to look to future years for remuneration as to any casual excess."

These rulings are in keeping with the common-law authorities:

"The common law was punctilious to preserve the difference between real and personal estate;

principally, perhaps, because of the difference in the law of succession. It was not permissible for a guardian to change real estate into personal, or personal into real, except for reasons which had been passed upon by the court. He could not therefore sell real estate of the ward, except in compliance with an order of court; and this rule still generally exists, unless altered by statute. Nor can the guardian mortgage the premises, nor by his acts or agreement impose a lien or other incumbrance upon it." 12 R. C. L. p. 1127, sec. 26.

What the committee could not do directly he could not do indirectly. The ward has no estate except the tract of land and about $500 in the hands of the committee. The committee cannot charge the land in any way. The ward is now about 50 years old, and as he gets older will no doubt be less able to work. It is therefore important that his estate should be preserved, and a sale of his land should not be ordered for his maintenance, unless indispensably necessary. Section 2150, Kentucky Statutes, provides:

"The circuit court may, on the application of a committee, order the sale of the whole or any part of the real estate of an idiot, lunatic, imbecile or incompetent person, when indispensably necessay for the payment of debts, or for the maintenance of such person and his family, and where the personal estate, with the rents and profits of the real estate, are not adequate for that purpose, may settle and distribute the estate in the manner provided for the settlement and distribution of the estates of insolvent decedents."

The sale of the whole or part of his real estate may be ordered when indispensably necessary for the support of the ward in an action by the committee against the ward for this purpose.

The instructions of the court to the jury are not made part of the record and so cannot be considered. But on the whole case the judgment is not warranted by the evidence; no judgment should have gone against the committee for a greater amount than the income of the estate on hand. On the return of the case to the circuit court, it will be transferred to equity. Persons of unsound mind, like infants, are under the special protection of

courts of equity, who are charged with the duty to see that they are not prejudiced by any act or omission of those representing them. Galloway v. Hamilton, 1 Dana, 576; Newland v. Gentry, 18 B. Mon. 666; Robinson v. Talbot, 78 S. W. 1108, 25 Ky. Law Rep. 1914. The question presented now is how shall the income on the ward's estate be appropriated, and this is a matter to be determined in equity, that justice may be done the ward and his interests properly protected. The court will determine from all the evidence what allowance should be made the plaintiff for his care of the ward and direct its payment by the committee, not to exceed in all the amount in the committee's hands and having in view what he was paid for such services before the present committee's appointment, the condition of the ward at the time, and all the circumstances. The plaintiff cannot maintain any claim against the committee in excess of the income from the land; for he was bound to take notice of the law that the land could not be sold or charged in any way, unless the court had so ordered. If the plaintiff is not willing to continue to keep the ward on the terms fixed by the court, it will be the duty of the committee to make some other arrangement for his keep, and if necessary to apply to the court for its direction in the matter.

On the return of the case to the circuit court, the proof taken on the trial will be treated as the depositions of the witnesses after the case is transferred to equity, and each party will be allowed to take such further proof as he may desire.

Judgment reversed and cause remanded for further proceedings consistent herewith.